ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **JULIO ANTONIO SOLIVAN RODRÍGUEZ, WANDA IVETTE RODRÍGUEZ APONTE, Sociedad Legal de Gananciales constituida por JULIO ANTONIO SOLIVAN RODRÍGUEZ y WANDA IVETTE RODRÍGUEZ APONTE**<br><br>Recurridos<br><br>v.<br><br>**CARLOS JAVIER FUENTES MATOS**<br><br>Peticionario | TA2026AP00249 | **APELACION** acogido como *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **Aibonito**<br><br>Civil Núm.:<br>**AI2024CV00538**<br><br>Sobre:<br>Incumplimiento de Contrato, Daños |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 16 de abril de 2026.

Comparece ante nos el señor Carlos Javier Fuentes Matos (señor Fuentes Matos o peticionario), mediante el presente recurso de *Apelación*, y nos solicita que revisemos la *Sentencia Parcial*, emitida el 21 de enero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Aibonito (TPI).[1] Mediante el aludido dictamen, el foro primario denegó la *Solicitud de sentencia sumaria parcial* presentada por el señor Fuentes Matos,[2] empero resolvió sumariamente a favor del señor Julio Antonio Solivan Rodríguez (señor Solivan Rodríguez), la señora Wanda Ivette Rodríguez Aponte (señora Rodríguez Aponte), al igual que la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, parte recurrida) en

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, Entrada Núm. 67. Notificada el 26 de enero de 2026.
[2] *Íd.*, Entrada Núm. 41.

cuanto al incumplimiento de contrato. Por tal razón, el TPI condenó al señor Fuentes Matos al pago total de $23,404.92, y declaró *No Ha Lugar* la *Reconvención* interpuesta por este.[3]

Por los fundamentos expuestos a continuación, y por recurrirse de una *Sentencia Parcial* que carece de las palabras sacramentales dispuestas en la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3, acogemos el presente recurso como un auto de *certiorari.* De este modo, expedimos el mismo y confirmamos el dictamen recurrido.

Además, declaramos No Ha Lugar la *Moción en Solicitud de Desestimación de Apelación, Por Falta de Jurisdicción* presentada ante nos por la parte recurrida.

**I.**

El caso de autos tiene su génesis el 27 de noviembre de 2024 cuando la parte recurrida interpuso una *Demanda* en contra del señor Fuentes Matos en concepto de daños y perjuicios e incumplimiento de contrato.[4] En particular, planteó que, para finales del año 2009, suscribió junto con el señor Fuentes Matos la Escritura Núm. 125 sobre Opción de Compra a los fines de que este último le vendiera un inmueble localizado en Aibonito, el que se encontraba gravado por una hipoteca que garantizaba un pagaré por la suma de $175,000.00.

Igualmente, arguyó que, posteriormente, el 25 de marzo de 2014, las partes otorgaron la Escritura Núm. 16 a los fines de extender el término de la opción a compra por diez (10) años adicionales. Particularmente, la parte recurrida expuso que se hizo constar en el instrumento público la existencia de una anotación preventiva de embargo como una de las cargas y gravámenes del inmueble. En específico, dicha anotación fue producto de una

---

[3] *Íd.*, Entrada Núm. 10.
[4] *Íd.*, Entrada Núm. 1.

acción judicial incoada por el acreedor hipotecario, Banco Bilbao Vizcaya Argentaria, en contra del señor Fuentes Matos, en el caso civil número BCD2010-0053. Asimismo, que se estipuló en el Apartado Séptimo de la Escritura que el señor Fuentes Matos asumió la obligación de gestionar la liberación o la cancelación del antedicho gravamen de manera que la parte recurrida adquiriera el título de la propiedad libre del mismo.

Además, esgrimió que, el 26 de marzo de 2014, las partes suscribieron la Escritura Núm. 18 sobre Compraventa. Según coligió, allí se formalizó la venta del inmueble y, como parte de los términos y condiciones, se convino que el señor Fuentes Matos se obligó a gestionar el permiso del acreedor hipotecario para el negocio jurídico; la aclaración de una deuda del inmueble ante el Centro de Recaudación de Ingresos Municipales (CRIM), ascendente a $9,878.30 y correspondiente a periodos contributivos desde el año 2008 hasta la fecha del otorgamiento del instrumento; y a efectuar la cancelación del embargo preventivo.

Sin embargo, señaló que las referidas gestiones fueron incumplidas por el señor Fuentes Matos. En específico, sostuvo que, para detener el proceso de ejecución de hipoteca, se vio obligada a satisfacer pagos atrasados acumulados por el impago del señor Fuentes Matos, al igual que otros gastos, lo que sobrepasaba la suma de $13,000.00. Asimismo, que incumplió con obtener el permiso del acreedor hipotecario para inscribir el inmueble en el Registro de la Propiedad a favor de la parte recurrida. De igual forma, indicó que el señor Fuentes Matos dio instrucciones al acreedor hipotecario para que cesara de aceptar los pagos al préstamo efectuados por la parte recurrida. Por todo lo anterior, solicitó al TPI que condenara al señor Fuentes Matos al reembolso de los gastos efectuados por su alegado incumplimiento, así como al resarcimiento de los daños y perjuicios sufridos.

A su vez, el 24 de enero de 2025, el señor Fuentes Matos interpuso una *Contestación a Demanda,*[5] en la que denegó las alegaciones y planteó sus defensas afirmativas. Junto con su alegación responsiva, el señor Fuentes Matos instó una *Reconvención.* En la misma, reiteró que, desde o alrededor del 21 de marzo de 2023, la parte recurrida dejó de realizar los pagos de la hipoteca. Consecuentemente, según esgrimió, el acreedor hipotecario le notificó del atraso mediante misivas cursadas entre marzo y septiembre de 2023, cuyo total ascendía a $5,865.20. Ante ello, sostuvo que, el 21 de noviembre de 2023, realizó un pago por la antedicha suma. Por tanto, solicitó al TPI que condenara a la parte recurrida a la retribución del pago efectuado por el atraso en la hipoteca, y que se ordenara el desahucio de la parte recurrida de la propiedad, así como que se le entregara el inmueble.

Así las cosas, el 5 de febrero de 2025, la parte recurrida incoó una *Réplica a Reconvención.*[6] En síntesis, sostuvo que cualquier omisión o atraso en los pagos hipotecarios se produjo por la instrucción del señor Fuentes Matos para que el banco no aceptara los pagos de la parte recurrida.

Tras varios incidentes procesales, el 30 de julio de 2025, el señor Fuentes Matos presentó una *Solicitud de Sentencia Sumaria Parcial.*[7] En apretada síntesis, propuso treinta (30) determinaciones de hechos incontrovertidos y expuso dos (2) asuntos litigiosos en controversia, a saber: si las reclamaciones sobre los pagos de la deuda del caso civil número BCD2010-0053, la eliminación de la anotación preventiva de embargo y la deuda ante el CRIM estaban prescritas. Además, si la parte recurrida incumplió sus obligaciones y reclama de mala fe por daños autoinfligidos.

---

[5] *Íd.,* Entrada Núm. 10.
[6] *Íd.,* Entrada Núm. 12.
[7] *Íd.,* Entrada Núm. 41.

Respecto al primer asunto litigioso, expuso que, por tratarse de una acción personal, el término prescriptivo aplicable para la reclamación por el pago de las deudas era de cuatro (4) años, conforme establece el Artículo 1203 del *"Código Civil de Puerto Rico" de 2020* (Código Civil de 2020), Ley Núm. 55 del 1 de junio de 2020, según enmendado, 31 LPRA sec. 9495. En ese sentido, arguyó que la causa de acción por dichos pagos fue realizada *motu proprio* por la parte recurrida y sin consultársele. Asimismo, invocó la doctrina de contrato no cumplido y adujo que, por cuanto la parte recurrida incumplió con sus propias obligaciones, no se le podía exigir el cumplimiento de las suyas.

En respuesta, el 14 de agosto de 2025, la parte recurrida interpuso una *Moción en Oposición a "Solicitud de Sentencia Sumaria Parcial" (Doc. # 41)*.[8] Especificó que la presente acción judicial surgió de incumplimientos contractuales que fueron pactados en la Escritura Núm. 18 sobre Compraventa, suscrita en el 2014. En ese sentido, planteó que era de aplicación lo dispuesto por el Artículo 1864 del *"Código Civil de Puerto Rico" Edición de 1930* (Código Civil de 1930), 31 LPRA ant. sec. 5294, el que estaba vigente al momento del otorgamiento del instrumento público, y disponía que las acciones personales sin un término prescriptivo específico prescriben a los quince (15) años. Así pues, dado que la causa de acción se ejercitó antes de transcurrido el término de quince (15) años a partir de 2014, la misma no estaba prescrita.

El 9 de septiembre de 2025, el señor Fuentes Matos intercaló una *D[ú]plica a Oposici[ó]n a Sentencia Sumaria*.[9] Mediante esta, señaló que el escrito en oposición a la solicitud de sentencia sumaria no cumplía con las disposiciones de las Reglas de Procedimiento Civil, *supra,* sino que descansó en las alegaciones propuestas en la

---

[8] *Íd.*, Entrada Núm. 43.
[9] *Íd.*, Entrada Núm. 54.

petición de disposición sumaria. Lo anterior, por cuanto no contenía un resumen de las alegaciones, la relación de aquellos hechos que entendía controvertidos, ni la identificación de los asuntos litigios.

En respuesta, el 11 de septiembre de 2025, la parte recurrida presentó un escrito intitulado *Triplica [sic] a "D[ú]plica a Oposición a Sentencia Sumaria"*, mediante el que señaló como frívola la contención del señor Fuentes Matos en cuanto al incumplimiento con las Reglas de Procedimiento Civil, *supra.*[10]

Trabado el asunto, el 21 de enero de 2026, el foro *a quo* emitió una *Sentencia Parcial.*[11] En el aludido dictamen, denegó la solicitud de sentencia sumaria presentada por el señor Fuentes Matos, más emitió una determinación parcial a favor de la parte recurrida respecto al incumplimiento de contrato. Así pues, condenó al señor Fuentes Matos al pago inmediato de la suma total de $23,404.92, por concepto del embargo y el adeudo ante el CRIM sobre la propiedad, que fueron satisfechos por la parte recurrida. De igual forma, declaró *No Ha Lugar* la *Reconvención* incoada por el señor Fuentes Matos. Por otro lado, mantuvo vigente la causa de acción por los daños y perjuicios y, a esos fines, señaló la celebración del juicio en su fondo.

Inconforme, el 9 de febrero de 2026, el señor Fuentes Matos solicitó una *Reconsideración.*[12] En síntesis, reiteró que la causa de acción presentada en su contra estaba prescrita y que la parte recurrida incumplió con sus propias obligaciones, por lo que no podía exigírsele cumplir las suyas. En cuanto a esto último, alegó que, en la alternativa, procedía reducir $5,865.20 de la suma a la que se le condenó a pagar, por concepto de los pagos realizados al

---

[10] *Íd.*, Entrada Núm. 55.
[11] *Íd.*, Entrada Núm. 67. Notificada el 26 de enero de 2026.
[12] *Íd.*, Entrada Núm. 68.

acreedor hipotecario y para evitar que ejecutaran la propiedad a la parte recurrida.

Ese mismo día, el TPI emitió una *Orden* mediante la que declaró *No Ha Lugar* el petitorio de reconsideración.[13]

Aun inconforme, el 9 de marzo de 2026, el señor Fuentes Matos compareció ante nos, mediante un recurso de apelación-acogido como auto de *certiorari*-, y señaló al foro *a quo* por la comisión de los siguientes errores:

1) **ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER QUE EL DEMANDADO-APELANTE RECONOCIÓ EL PAGO REALIZADO POR LOS DEMANDANTES-APELADOS Y POR TAL RAZÓN NO APLICA LA DEFENSA DE PRESCRIPCIÓN.**

2) **ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LOS DEMANDANTES-APELADOS NO INCUMPLIERON DE IGUAL FORMA SUS OBLIGACIONES CONTRACTUALES.**

3) **ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA RECONVENCIÓN RADICADA POR EL DEMANDADO-APELANTE.**

4) **ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL NO REDUCIR LOS $5,865.20 QUE PAGÓ EL DEMANDADO-APELANTE DE LA SUMA IMPUESTA EN LA SENTENCIA.**

5) **ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL TOMAR EN CONSIDERACIÓN UNA OPOSICIÓN A SENTENCIA SUMARIA EN CONTRAVENCIÓN A LA REGLA 36 DE LAS DE PROCEDIMIENTO CIVIL.**

Por su parte, el 16 de marzo de 2026, la parte recurrida radicó una *Moción en solicitud de desestimación de apelación, por falta de jurisdicción*, a la que se opuso el señor Fuentes Matos el 24 de marzo de 2026.

Así pues, con el beneficio de la comparecencia de todas las partes y del expediente ante nos, procedemos a disponer del recurso

---

[13] *Íd.*, Entrada Núm. 69. Notificada el 10 de febrero de 2026.

ante nuestra consideración no sin antes exponer el marco jurídico aplicable.

**II.**

**A.**

El auto de *certiorari* es un auto procesal extraordinario donde se solicita de un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Es norma reiterada que una resolución u orden interlocutoria es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera et al. v. Arcos Dorados et al., supra,* págs. 207-208. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846 (2023).

Por su parte, la Regla 52.1 de Procedimiento Civil, *supra,* limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Rivera et al. v. Arcos Dorados et al., supra,* págs. 207-208. La antedicha regla establece, en lo pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
> . . . .

El delimitar la revisión a dichas instancias específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020).

Por otro lado, el examen que hace esta Curia previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez, supra*, pág. 848; *800 Ponce de León v. AIG, supra*, pág. 176. En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari*. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336-337 (2023).

La referida regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio, como tampoco constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 n. 15 (2005). Por lo que, de los factores esbozados se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida como la etapa del procedimiento en la que fue presentada. Lo anterior, a los fines de determinar si es la más apropiada para intervenir sin ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

Es norma reiterada que, el foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los que se demuestre que el dictamen que emitió el foro de instancia es arbitrario o constituye un exceso de discreción. *BPPR v. SLG Gómez-López, supra*, pág. 334.

**B.**

La Regla 36 de Procedimiento Civil, *supra*, R. 36, establece el mecanismo procesal de la sentencia sumaria. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los que no existe controversia real y sustancial de hechos materiales y que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 430 (2013). Mediante este procedimiento, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad o parte de la reclamación, y así se promueve la descongestión de calendarios. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

De igual modo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos

esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo que implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión,* 178 DPR 200, 216-217 (2010).

Además, nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos tales como la intención, los propósitos mentales o la negligencia. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 278 (2021). Sin embargo, "nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando surge de los documentos que se considerarán en la solicitud de sentencia sumaria la inexistencia de una controversia en torno a los hechos materiales". *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993-994 (2024).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas, supra,* pág. 110. Por hechos materiales

se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión, supra*, pág. 213. Además:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria.
>
> *Ramos Pérez v. Univisión, supra*, págs. 213-214 (*citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987)).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ª ed. rev., San Juan, Ed. LexisNexis, 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. *Meléndez González et al. v. M. Cuebas, supra*, pág. 110 (*citando a Ramos Pérez v. Univisión, supra*, pág. 214). Además, la parte promovida tiene que puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón, supra*, pág. 44. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *León Torres v.*

*Rivera Lebrón, supra,* pág. 44. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo, supra,* pág. 453; *Ramos Pérez v. Univisión, supra,* pág. 215; *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007).

Según la Regla 36.3(b) de Procedimiento Civil, *supra,* R. 36.3(b), la parte debe presentar la contestación a la moción de sentencia sumaria dentro dentro del término de veinte (20) días de su notificación. Si dicha parte no presenta la contestación dentro de este término, "se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal". Regla 36.3(e) de Procedimiento Civil, *supra,* R. 36.3(e).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra,* R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.

Por otra parte, la Regla 36.3(b) de Procedimiento Civil, *supra*, señala que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las que no se debe dictar la sentencia, argumentando el derecho aplicable.

De otra parte, en *Meléndez González et al. v. M. Cuebas*, *supra*, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 115. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 119.

**C.**

Entre las defensas afirmativas que pueden levantarse en la alegación responsiva, está la prescripción extintiva. Regla 6.3 de Procedimiento Civil, *supra*. En lo pertinente, la prescripción extintiva es una figura del Derecho Civil que extingue el derecho de una persona a ejercer determinada causa de acción, que, a su vez, está intrínsecamente unido al derecho que se intenta reivindicar. *SLG Haedo-López v. SLG Roldán-Rodríguez*, 203 DPR 324, 336 (2019). Este tipo de acción prescribe por el mero lapso del tiempo fijado por la ley. Artículo 1861 de Código Civil de 1930, *supra*, ant. sec. 5291.

El propósito de la figura de la prescripción es castigar la inercia y la estimulación de ejercer de manera rápida sus acciones, pues no se debe exponer a otras personas toda la vida, o por un largo tiempo, a ser demandadas. *SLG Haedo- López v. SLG Roldán-Rodríguez, supra*, págs. 336-337. Aun así, el término prescriptivo de las acciones queda interrumpido por las siguientes acciones: (1) su ejercicio ante los tribunales; (2) por la reclamación extrajudicial del acreedor; y (3) por cualquier acto de reconocimiento de la deuda por

el deudor. Artículo 1873 del Código Civil de 1930, *supra*, ant. sec. 5303.

Respecto a las acciones personales en cobro de dinero, les aplica el término prescriptivo dispuesto para acciones personales. *Blanch v. Sucn. Del Moral*, 57 DPR 23, 27 (1940). De aplicar el derogado Código Civil del 1930, *supra*, ant. sec. 5294, el término prescriptivo sería de quince (15) años para el ejercicio de dichas causas de acción. Sin embargo, de aplicar el Código Civil de 2020, *supra*, sec. 9495, serían cuatro (4) años, salvo cuando la ley fije un plazo distinto. Para determinar cuál de los dos códigos aplica, el Artículo 1814 del Código Civil de 2020, *supra*, sec.11719, dispone que:

> Los **términos prescriptivos**, de caducidad o de usucapión **que estén transcurriendo en el momento en que este Código entre en vigor**, **tienen la duración dispuesta en la legislación anterior**; pero si el término queda interrumpido después de la entrada en vigor de este Código, su duración será la determinada en este.

(Énfasis suplido).

### D.

Según el Artículo 1077 del Código Civil de 1930, *supra*, ant. sec. 3052, ante el incumplimiento de una obligación recíproca, la parte afectada puede exigir su cumplimiento. *Álvarez v. Rivera*, 165 DPR 1, 20 (2005). De este modo, el código consagra el principio general que solicita que en las obligaciones bilaterales ninguna de las partes puede demandar el cumplimiento de la obligación contraria sin cumplir o brindar el cumplimiento de la obligación propia. Es decir, si el que incurre en incumplimiento solicita la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido. *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 742 (1987). Este principio se conoce como la *excepción de contrato no cumplido* (*exceptio non adimpleti contractus*). *Constructora Bauzá, Inc. v. García López*, 129 DPR 579, 593 (1991).

Esta excepción de contrato incumplido se fundamenta en la regla de ejecución simultánea de obligaciones recíprocas. Artículo 1053 del Código Civil de 1930, *supra,* ant. sec. 3017.

Expuesta la normativa jurídica aplicable, procedemos a disponer del recurso instado ante nos.

### III.

Según la *Sentencia Parcial* recurrida, el foro primario denegó la solicitud de sentencia sumaria presentada por el señor Fuentes Matos, más emitió una determinación parcial a favor de la parte recurrida. En ese sentido, justipreció que la controversia sobre la prescripción era una de estricto derecho y que los hechos referentes a los pagos realizados por la parte recurrida fueron admitidos por el señor Fuentes Matos. Siendo así, resolvió que, por cuanto la obligación contractual se perfeccionó en el año 2014, le eran de aplicación las disposiciones del derogado Código Civil de 1930, *supra.* Consecuentemente, al tratarse de una acción personal, regía el término prescriptivo de quince (15) años, el que no había transcurrido. Así pues, condenó al señor Fuentes Matos al pago inmediato de la suma total de $23,404.92, por concepto del embargo y lo adeudado ante el CRIM sobre la propiedad, que fueron satisfechos por la parte recurrida. De igual forma, declaró *No Ha Lugar* la *Reconvención* incoada por el señor Fuentes Matos.

Inconforme, el señor Fuentes Matos planteó ante nos que el TPI erró al tomar en consideración la oposición a sentencia sumaria presentada por la parte recurrida cuando era contraria a la Regla 36 de Procedimiento Civil, *supra*; y al resolver la improcedencia de la defensa de prescripción. De igual modo, expuso el señor Fuentes Matos que el TPI incidió al no determinar que la parte recurrida también incumplió con sus obligaciones contractuales; al no reducir la cantidad de $5,865.20 de la partida impuesta en su contra; y al desestimar la reconvención radicada por él.

Por su parte, la parte recurrida presentó una *Moción en Solicitud de Desestimación de Apelación, Por Falta de Jurisdicción* dado a que el dictamen emitido por el foro primario no resolvió de modo final todas las cuestiones litigiosas y adolecía de la expresión de finalidad requerida por la Regla 42.3 de Procedimiento Civil, *supra*. De ese modo, sostuvo que el dictamen constituía una resolución interlocutoria, y, por tanto, el recurso de apelación interpuesto era uno prematuro, y solicitó su desestimación.

En oposición a dicha solicitud de desestimación, el señor Fuentes Matos expuso que el dictamen recurrido tenía carácter de finalidad y constituiría un perjuicio sustancial para él si no se consideraba la desestimación de su reconvención.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no cometió los planteamientos de error. Según *Meléndez González et al. v. M. Cuebas, supra*, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria conlleva revisar *de novo* el petitorio sumario junto a los anejos y el escrito en oposición a la solicitud de sentencia sumaria. Al amparo del segundo pilar de dicho análisis, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplen con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. En efecto, luego de un examen cuidadoso de la *Solicitud de sentencia sumaria parcial* presentada por el señor Fuentes Matos y la oposición radicada por la parte recurrida, colegimos que cumplen sustancialmente con los requisitos de forma de la Regla 36 de Procedimiento Civil, *supra*. Por tal razón, el foro primario no incurrió en el <u>quinto</u> señalamiento de error.

Atendidos los primeros dos eslabones del análisis apelativo sobre las solicitudes de sentencia sumaria, ahora procedemos a evaluar como tercer paso si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia

establecida en la Regla 36.4 de Procedimiento Civil, *supra,* y exponer cuáles son los hechos materiales que están en controversia y cuáles están incontrovertidos.

En el presente caso, si bien el foro primario denegó la solicitud de sentencia parcial presentada por el señor Fuentes Matos, resolvió sumariamente a favor de la parte recurrida la controversia relacionada al incumplimiento de contrato. En torno a este asunto, las partes suscribieron la Escritura Núm. 18 sobre Compraventa el 26 de marzo de 2014 donde la parte recurrida adquirió la propiedad en cuestión localizada en Aibonito, Puerto Rico.[14] Consta en dicho instrumento público una anotación preventiva de embargo a favor del Banco Bilbao Vizcaya Argentaria de Puerto Rico por la suma total de $13,526.62,[15] realizada mediante el caso número BCD2010-0053 radicado contra el señor Fuentes Matos. De igual modo, se desprende una deuda por la cantidad de $9,878.30 en concepto de contribuciones sobre la propiedad acumuladas ante el CRIM,[16] respecto a la que el señor Fuentes Matos se obligó a aclarar el estado de la deuda en aquel momento y/o a pagar esos periodos, correspondiéndole a la parte recurrida de ese momento en adelante.

Además, las partes convinieron que el acuerdo allí alcanzado se retrotraía al contrato de opción de compraventa otorgado el 3 de diciembre de 2009 por medio de la Escritura Núm. 125.[17] Según este último instrumento público, el señor Fuentes Matos se obligó a entregar a la parte recurrida la propiedad en cuestión libre de cargas y gravámenes.[18] Sin embargo, incumplió con ello. Ciertamente, de todo lo anterior se puede colegir que las determinaciones de hechos formuladas por el TPI respecto a la causa de acción de incumplimiento de contrato surgen incontrovertidamente del

---

[14] *Íd.*, Entrada Núm. 41, Anejo 5.
[15] *Íd.*, pág. 4.
[16] *Íd.*, pág. 6.
[17] *Íd.*, Anejo 2.
[18] *Íd.*, pág. 4.

récord. Inclusive, el señor Fuentes Matos, mediante su *Solicitud de sentencia sumaria parcial,* reconoció los pagos realizados por la parte recurrida en cuanto a ambas deudas, empero levantó la defensa de prescripción.

No existiendo hechos en controversia, pasamos al cuarto y último eslabón; es decir, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* *supra,* pág. 119.

Tal como pormenorizamos anteriormente, el propósito de la figura de la prescripción es castigar la inercia y la estimulación de ejercer de manera rápida sus acciones, pues no se debe exponer a otras personas toda la vida, o por un largo tiempo, a ser demandadas. *SLG Haedo- López v. SLG Roldán-Rodríguez, supra,* págs. 336-337. Respecto a las acciones personales en cobro de dinero, les aplica el término prescriptivo dispuesto para acciones personales. *Blanch v. Sucn. Del Moral, supra,* pág. 27. Según el Código Civil del 1930, *supra,* ant. sec. 5294, el término prescriptivo sería de quince (15) años para el ejercicio de dichas causas de acción. Sin embargo, el Código Civil de 2020, *supra,* sec. 9495, dispone que serían cuatro (4) años, salvo cuando la ley fije un plazo distinto. Para determinar cuál de los dos códigos aplica, el Artículo 1814 del Código Civil de 2020, *supra,* sec.11719, dispone que:

> Los **términos prescriptivos**, de caducidad o de usucapión **que estén transcurriendo en el momento en que este Código entre en vigor**, **tienen la duración dispuesta en la legislación anterior**; pero si el término queda interrumpido después de la entrada en vigor de este Código, su duración será la determinada en este.

> (Énfasis suplido).

En el presente caso, el derecho a reclamar el reembolso de las deudas satisfechas por la parte recurrida nació en el año 2014, a tenor con el derogado Código Civil de 1930, *supra.* Ello, pues fue el 26 de marzo de 2014 cuando las partes acordaron la compraventa

del inmueble incluyendo su entrega libre de cargas y gravámenes. Por tal razón, la acción personal de incumplimiento de contrato prescribiría dentro del término de quince (15) años, conforme al Artículo 1864 del Código Civil del 1930, *supra*, ant. sec. 5294. Como la demanda de marras fue radicada en el 2024, dicha reclamación no ha prescrito. Por tal razón, el foro primario no incidió en el <u>primer</u> señalamiento de error.

Por otro lado, expresamos que, ante el incumplimiento de una obligación recíproca, la parte afectada puede exigir su cumplimiento. Artículo 1077 del Código Civil, *supra*, ant. sec. 3052; *Álvarez v. Rivera, supra*, pág. 20. Es decir, si el que incurre en incumplimiento solicita la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido. *Mora Dev. Corp. v. Sandín, supra*, pág. 742. Este principio se conoce como la *excepción de contrato no cumplido* (*exceptio non adimpleti contractus*). *Constructora Bauzá, Inc. v. García López, supra*, pág. 593. Esta excepción de contrato incumplido se fundamenta en la regla de ejecución simultánea de obligaciones recíprocas. Artículo 1053 del Código Civil de 1930, *supra*, ant. sec. 3017. Ahora bien, en el presente caso, fue el propio señor Fuentes Matos quien adeudaba las partidas relacionadas a las deudas del CRIM y la anotación preventiva de embargo. Es decir, la parte recurrida no incumplió con sus obligaciones contractuales, y, por ende, el señor Fuentes Matos no podía oponer contra esta la defensa del contrato incumplido. Así, el TPI tampoco incurrió en el <u>segundo</u> señalamiento de error.

Por último, el señor Fuentes Matos adujo que procedía su reconvención; es decir, la reducción de $5,865.20 de la suma impuesta en su contra mediante la determinación recurrida, por haber pagado dicha cuantía para evitar una ejecución de hipoteca. Sin embargo, la suma ordenada por el foro primario contra el señor Fuentes Matos fue en concepto de la anotación preventiva de

embargo y las deudas del CRIM, no por deudas hipotecarias incurridas con posterioridad a estas. Por ende, el foro primario tampoco incurrió en los errores <u>cuatro</u> y <u>cinco</u>.

**IV.**

Por los fundamentos expuestos anteriormente, expedimos el auto de *certiorari* -instado inicialmente como apelación- y confirmamos el dictamen recurrido.

De igual modo, declaramos No Ha Lugar la *Moción en Solicitud de Desestimación de Apelación, Por Falta de Jurisdicción* presentada ante nos por la parte recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones